████████████████████

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| EDGE NETWORKING SYSTEMS LLC,<br><br>     Plaintiff,<br><br>   v.<br><br>AMAZON.COM SERVICES LLC.,<br><br>     Defendant. | Case No. 2:24-cv-00887-JRG-RSP |

**DEFENDANT AMAZON.COM SERVICES, LLC'S MOTION TO TRANSFER**

████████████

**TABLE OF CONTENTS**

Page(s)

I.      INTRODUCTION ................................................................................................................1

II.     FACTUAL BACKGROUND ...........................................................................................2

        A.      Plaintiff Filed In This District Despite Its Negligible Connection To This Case .................................................................................................................................2

        B.      Key Evidence And Witnesses Are Concentrated In Or Near NDCA .....................3

III.    Legal Standard ....................................................................................................................5

IV.     ARGUMENT ......................................................................................................................6

        1.      This Case Could Have Been Brought In NDCA .......................................6
        2.      The Private Interest Factors Favor Transfer .............................................6
        3.      The Public Interest Favors Transfer..........................................................13

V.      CONCLUSION ................................................................................................................15

i

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                          **Page(s)**

*Brackett v. Hilton Hotels Corp.*,
   619 F. Supp. 2d 810 (N.D. Cal. 2008) ....................................................................10

*In re Apple, Inc.*,
   581 F. App'x. 886 (Fed. Cir. 2014) .........................................................................9

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020)................................................................................11

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009).................................................................................6

*In re Google LLC*,
   58 F.4th 1379 (Fed. Cir. 2023) ...........................................................................5, 14

*In re Google LLC*,
   No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) (per curiam) ...........12

*In re Hulu, LLC*,
   No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ...................................10

*In re Juniper Networks, Inc.*,
   14 F.4th 1313 (Fed. Cir. 2021) ...................................................................... *passim*

*In re Netflix, Inc.*,
   No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022) ................................9, 11

*In re Pandora Media, LLC*,
   No. 2021-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021)..................................11

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ....................................................................................5

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) (en banc) ...........................................................5-6, 12

*LoganTree, LP v. Apple, Inc.*,
   No. 6:21-CV-00397-ADA, 2022 WL 1491097 (W.D. Tex. May 11, 2022) ............7

*Mullen Indus. LLC v. Samsung Elec. Co.,*
    24-cv-49 (E.D. Tex. Mar. 25, 2025) ........................................................................13

*RFCyber Corp. v. Costco Wholesale Corp.,*
    24-cv-00546 Dkt. 1 (E.D. Tex. July 18, 2024) ..................................................3, 14

*Smart Mobile Techs. LLC v. Apple Inc.,*
    No. W-21-CV-00603-ADA, 2023 WL 5540152 (W.D. Tex. Aug. 28, 2023).......................15

*TrackThings LLC v. Amazon.com, Inc.,*
    No. 6:21-CV-720-ADA, 2022 WL 1462204 (W.D. Tex. May 9, 2022) .................................6

**Federal Statutes**

28 U.S.C. § 1400(b) ....................................................................................................6

28 U.S.C. § 1404(a) ...............................................................................................5, 12

**Other Authorities**

Fed. R. Civ. P. 45(c)(1).............................................................................................10

██████████████████████████████████████████

## I.    INTRODUCTION

Edge Networking Systems LLC ("Edge") filed this patent infringement action on November 1, 2024, against Amazon.com Services, LLC ("ASL"), Amazon.com, Inc. ("ACI"), and Amazon Web Services, Inc. ("AWS").  ACI and AWS moved to dismiss for improper venue, noting that neither entity had a regular and established place of business within this District.  Rather than oppose that motion, Edge dropped ACI and AWS as defendants, and filed an amended complaint pursuing patent infringement claims solely against ASL.

The Northern District of California ("NDCA") is a far more convenient forum for Edge's claims against ASL than is the Eastern District of Texas ("EDTX").  Central to the suit are the two non-party inventors and their respective former employers, ███████████████████████████ ████████████████████████████████████████████ Exhibits 31-32, ████████████████████████████████, respectively.[1]  Both inventors currently reside in NDCA.  Their former employers – Intel Corp. ("Intel") and Cisco, Inc. ("Cisco") – are likewise located in NDCA.  Even though Messrs. Ramanna and Taaghol allegedly invented the claimed subject matter while employed by Intel and Cisco respectively, ██████████████ ████████████████████████████████████████████████████████████████ ███████████████[2] the two inventors filed their non-provisional patent application in their own name.  As such, Edge in all likelihood lacks standing to bring this suit, but the crux of the suit's relevant evidence on the standing issue and others is in NDCA.

----

[1] ████████████████████████████████████████████████████
████████████████████████████████████████

[2] ████████████████████████████████████████████████████
████████████████

NDCA is where Intel and Cisco had developed key prior art to the asserted patents. This prior art is relevant to Amazon's derivation and improper inventorship defenses, as well as to the inventors' possible failure to comply with their duty to disclose that pertinent prior art to the Patent Office. All of this evidence lies in NDCA, not in EDTX.

Other primary evidence is similarly in NDCA. The patent prosecuting attorney is in NDCA. Witnesses and documents relevant to the prior art implicated by Edge's claims are concentrated in NDCA. The products at issue—Elastic Container Service ("ECS") and Elastic Kubernetes Service ("EKS") (collectively, the "Accused Products")—were designed, developed, and maintained by non-party AWS. AWS has relevant third-party witnesses and relevant sources of proof in or near NDCA—not in this District (as Edge's failure to oppose AWS's motion to dismiss for lack of venue tacitly acknowledges). On the other hand, nothing favors keeping this case here. Plaintiff's only connection to this District is a mailing address to a WeWork location, seemingly created solely to facilitate litigation here.

As the core of this case is located in NDCA, it is clearly the more suitable venue. ASL respectfully requests transfer to that District.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff Filed Here Despite This District's Negligible Connection To This Case

Edge originally filed this case in November 2024, asserting patent infringement against ASL, AWS, and ACI. Compl. for Patent Infringement ("Compl.") ¶¶ 28–29 (Dkt. 1). After AWS and ACI moved to dismiss for improper venue, Edge amended its complaint to drop AWS and ACI from the case, leaving ASL as the sole defendant. Dkt. 53.

Edge's Initial Disclosures fail to identify any employees, directors, or managers who reside in EDTX; the only employee Edge identifies in its Initial Disclosures is its CEO, Grant Hyundong Kim, who apparently lives in South Korea. Exhibit 30, Edge Initial Disclosures ("Initial

Disclosures"). Edge also has no regular and established place of business in Texas. While Edge claims that it has a place of business in Plano, Texas at 7700 Windrose Avenue, Suite G300, that address is, in fact, a "WeWork" shared office location. Compl. ¶ 1; Exhibit 1, WeWork locations. The same is true of the other address listed on Edge's website—11801 Domain Blvd., 3rd Fl., Austin, TX 78758—another WeWork shared office location located outside of this district. Exhibit 1. Indeed, the WeWork location that Edge claims as its "place of business" in Plano, TX is exactly the same address asserted by another non-practicing entity represented by Edge's outside counsel. *See, e.g.*, *RFCyber Corp. v. Costco Wholesale Corp.*, 24-cv-00546 Dkt. 1, ¶ 1 (E.D. Tex. July 18, 2024) ("RFCyber is a Texas corporation with a place of business at 7700 Windrose Avenue, Suite G300, Plano, Texas 75024.").

The Accused Products in this case, EKS and ECS, are not made or sold by ASL. Bala Decl. ¶ 3. Non-party AWS—not ASL—is responsible for those products' design, development, operation, maintenance, and improvement. *Id*. The witnesses knowledgeable about the design, development, and operation of EKS or ECS are AWS employees, none of whom are in this District. Bala Decl. ¶¶ 5, 8.

ASL uses ECS and EKS merely as a customer of AWS. Bala Decl. ¶ 3. ASL has no corporate offices here. While ASL maintains Fulfillment Centers in this District, ASL's Fulfillment Center employees in EDTX are involved in the packaging and shipping of physical goods – not the design or development of EKS or ECS, or of ASL's internal applications that run on EKS or ECS.

## B. Key Evidence And Witnesses Are Concentrated In Or Near NDCA

In contrast to the lack of connection to EDTX, key evidence, witnesses, and sources of proof are in or near NDCA. Inventors Vivek Ramanna and Pouya Taaghol, neither of whom is affiliated with any party to this case, are both located in NDCA. Exhibit 2, V. Ramanna LinkedIn

3

Profile (Intel); Exhibit 3, P. Taaghol LinkedIn Profile (Cisco). Messrs. Ramanna and Taaghol allegedly invented the claimed subject matter while working at Intel and Cisco, respectively. *Id.* Intel and Cisco business at the time (and to this day) includes "software defined networks". Exhibits 24, 26, and 28 (showing Intel's development of software defined networks, as claimed); Exhibits 23, 25, and 27 (showing Cisco's development of software defined networks, as claimed).

Edge's initial disclosures also identify two other corporations that "may possess knowledge regarding the conception and reduction to practice, as well as ownership and licensing, of the Asserted Patents." Initial Disclosures. One is in NDCA; the other in Oregon (which is much closer to NDCA than ED Texas). *Id.* The patent prosecutor, Christopher Horgan, also resides in NDCA. Exhibit 15, ROARK IP Contact Information.

Prior art systems relevant to ASL's defense are made by companies Google, Intel, Cisco, and Arista—*all* of which are located in NDCA. Exhibits 19-22, NDCA Office Locations. Indeed, Google developed a predecessor to the technology underlying EKS—Kubernetes, the "K" in EKS—called Borg starting in 2008, well before the priority dates for the asserted patents. Individuals from those companies with relevant and material information (none of whom are affiliated with any party to this case) reside in NDCA or otherwise on the West Coast. Exhibit 2; Exhibit 3; Exhibit 4, A. Pech LinkedIn Profile (Arista); Exhibit 6, E. Brewer LinkedIn Profile (Google); Exhibit 8, J. Narayanaswamy LinkedIn Profile (Cisco); Exhibit 9, J. Ullal LinkedIn Profile (Arista); Exhibit 10, J. McDowall LinkedIn Profile (Cisco); Exhibit 11, J. Wilkes LinkedIn Profile (Google); Exhibit 12, M. Welch LinkedIn Profile (Intel); Exhibit 13, M. Zhu LinkedIn Profile (Intel). These individuals, who designed and developed the prior art systems, possess firsthand discoverable information on the progression of prior art, which is especially critical to patent validity in this case. Amazon has already served subpoenas on Intel, Cisco, Google, and

the two inventors, and attaches relevant claim charts to prior art systems from these companies here.  Exhibits 23-29.

Other potential witnesses are also concentrated in or near NDCA—far from this District.  ASL's limited connection to EKS or ECS is solely as a customer of AWS.  Bala Decl. ¶ 3.  As such, the potential witnesses who could testify to the development of the Accused Products are employees of non-party AWS, and are predominantly concentrated in NDCA or otherwise on the West Coast.  AWS's headquarters, as well as the leadership team and majority of engineers that work on both Accused Products, are located in Seattle, Washington—making NDCA a more convenient forum than the EDTX.  *See* Bala Decl. ¶¶ 2, 5–8.  In addition, the Directors of Software Development for both EKS and ECS are located in Seattle, from which travel to NDCA would be more convenient for those nonparty witnesses than travel to Marshall for trial.  *Id.*  AWS hosts corporate offices in NDCA, where dozens of EKS and ECS related employees sit.  Bala Decl. ¶ 2, 5–8.  Although some EKS or ECS personnel work in other locations, those locations do not include EDTX.  *Id.*

## III.  LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The court should grant transfer when a "movant 'demonstrates that the transferee venue is clearly more convenient.'"  *In re Google LLC*, 58 F.4th 1379, 1382 (Fed. Cir. 2023) (citing *In re Planned Parenthood Fed'n. of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022), and *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*")).  A threshold issue is whether the complaint could have been filed in the transferee district.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  If so, courts consider private and public interest factors relating to the convenience of parties and witnesses, as well as the

interests of the judicial districts in hearing the case. *Google*, 58 F.4th at 1382. *See also In re Juniper Networks, Inc.*, 14 F.4th 1313, 1316–17 (Fed. Cir. 2021) (listing factors).

## IV.    ARGUMENT

### 1.    This Case Could Have Been Brought In NDCA

Under 28 U.S.C. § 1400(b), a patent infringement suit may be brought in the judicial district where the defendant allegedly has committed acts of infringement and has a regular and established place of business. Here, ASL has regular and established places of business in NDCA. ASL Decl. ¶¶ 3–4. *See also TrackThings LLC v. Amazon.com, Inc.*, No. 6:21-CV-720-ADA, 2022 WL 1462204, at *3 (W.D. Tex. May 9, 2022) (finding in a patent infringement action that ASL has "at least one regular and established place of business in the NDCA"—its corporate offices). And to the extent Plaintiff contends ASL has committed acts of infringement within this District, those allegations apply to NDCA, as well. Bala Decl. ¶ 3.

### 2.    The Private Interest Factors Favor Transfer

#### a.    The Relative Ease Of Access To Sources Of Proof, Including Third Party Documents, Favors Transfer

There are no relevant sources of proof located in this District. Instead, the relevant sources of proof in this case are concentrated in or near NDCA.

This factor weighs in favor of transfer where the movant demonstrates that transfer will result in a *relatively* more convenient access to sources of proof. *Remmers v. United States*, 2009 BL 234217, 2009 WL 3617597, at *4 (E.D. Tex. Oct. 28, 2009); *TikTok*, 85 F.4th 352, 358 (5th Cir. 2023). In considering this factor, courts determine where evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted). Courts also consider the location of

███████████████████████████████

document custodians and the location where documents are created and maintained.  *LoganTree, LP v. Apple, Inc.,* No. 6:21-CV-00397-ADA, 2022 WL 1491097, at *2 (W.D. Tex. May 11, 2022) (citing *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *3 (Fed. Cir. Nov. 15, 2021)).

In this case, nearly all relevant sources of proof, including evidence related to the Accused Products and the asserted patents, belong to non-parties principally located in or around NDCA.

***The Inventors and Their Prior Employers***.  Inventors Vivek Ramanna and Pouya Taaghol both reside in NDCA.  Exhibit 2; Exhibit 3.  They developed the relevant technology while working at Intel and Cisco, respectively.  Both companies have their principal places of business in NDCA.  Exhibits 19-20. ████████████████████████████

███████████████████████████████████████

████████████████████████ Exhibits 31-32. ████████████████████

████████████████████████ Indeed, Intel and Cisco had developed key prior art systems at the time.  Exhibits 24-28.

Thus, highly pertinent evidence concerning the patents' creation and the relationship between the patents and the inventors' former employers is concentrated in NDCA.  Moreover, the inventors never cited Intel's prior art to the Patent Office when filing their patent application (presumably unbeknownst Intel).  Suspiciously, they also requested that their pending non-provisional patent application—the first non-provisional application in the Asserted Patents' family—not be published.  Exhibit 33, Excerpts from File History of U.S. Pat. 9,843,624, at 4, 6. That all raises serious questions, including whether Edge has standing to sue, whether the inventors were the true inventors, or whether the inventors committed inequitable conduct.  Documents and witnesses relevant to these issues are in NDCA, not this District.  Additionally, the attorney who

prosecuted the asserted patents is in San Jose, California, making any relevant documents he maintained likely located in NDCA as well.  Exhibit 15.

*Other Third Party Prior Artists*.  Aside from Intel and Cisco, third-party prior art systems from Google (e.g., Google Borg, a predecessor to EKS), and Arista (e.g., Arista Software Defined Cloud Networking (SDCN)) are also highly relevant to ASL's defenses insofar as they pertain to the key issues of patent invalidity, and are all situated in NDCA.  Each of those entities are headquartered in NDCA.  Exhibits 19-22, NDCA Office Locations.  And witnesses from those companies with relevant and material information regarding development and intricacies of the relevant third-party prior art systems similarly live in NDCA or elsewhere on the West Coast, further suggesting that any documents they may maintain are likely to be concentrated there. Exhibits 4-14, LinkedIn Profiles.

*The Accused Products*.  Evidence concerning the Accused Products is concentrated in or near Seattle, Washington, where AWS is headquartered.  Bala Decl. ¶ 2.  AWS marketing and finance employees who have knowledge of EKS and ECS financial data are located in or near NDCA.  Bala Decl. ¶ 6.

By contrast, there are no relevant documents in EDTX.  AWS does not even maintain a regular and established place of business in EDTX, let alone maintain documents here concerning the Accused Products.  Dkt. 35-2 ¶ 3-4.  AWS's proprietary source code related to the EKS and ECS is accessible from NDCA.  Bala Decl. ¶ 10.  And the only named Defendant, ASL, does not design or develop the Accused Products at all, much less in this District.  Bala Decl. ¶ 3.  Nor do any ASL facilities in this District (i.e., warehouses and package fulfillment centers) store EKS or ECS technical documentation.

Edge has not demonstrated that it is likely to maintain significant documentation related to this case in EDTX. Edge supposedly has an office in Plano, Texas, but as explained above that is merely a WeWork shared office address, not an actual Edge office. There is no reason to believe that Edge maintains any meaningful documents there, especially given that it is a shared space, and Edge identifies no employees with relevant knowledge who work in this District. Initial Disclosures; *Juniper Networks*, 14 F.4th at 1320 ("little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation").

Therefore, the bulk of relevant evidence for deciding infringement in this case will come from or near NDCA. *See, e.g. Uniloc USA, Inc. v. Activision Blizzard, Inc.*, at *2 (E.D. Tex. July 16, 2014) (finding this factor to favor transfer where Defendant "[was] presumed to have the bulk of the evidence in [NDCA].").

Because the relevant documents in this case are maintained principally in NDCA or in Seattle (substantially closer to NDCA than EDTX), this factor favors transfer. *In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *3 (Fed. Cir. Jan. 19, 2022) ("sources of proof" factor favors transfer where declaration shows that the defendant's "product and engineering teams are based" in transferee forum and source code and "documentation about the research, design, and development" of the Accused Products exists there).

> b.    Third-Party Witnesses Are Primarily Located In NDCA.

The availability of compulsory process to secure the attendance of third-party witnesses "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue[.]" *In re Apple, Inc.*, 581 F. App'x. 886, 889 (Fed. Cir. 2014); *TikTok*, 85 F.4th 352, 360 (5th Cir. 2023). A third-party witness may be compelled to attend trial in the state, or within 100 miles of, where the person "resides, is employed, or regularly transacts business in person." Fed.

R. Civ. P. 45(c)(1). Third-party witnesses residing, employed, or regularly transacting business in California are subject to the Northern District of California's subpoena power for trial. *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008). But they could not be subpoenaed in this District. That heavily favors transfer here.

Third-party witnesses are properly considered in the transfer analysis if a defendant shows that they have "relevant and material information" concerning the litigation. *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021). But a defendant need not show that they will necessarily testify at trial. *Id.*; *In re SAP Am., Inc., No. 2025-118* (Fed. Cir. Apr. 15, 2025) (noting district court expressed "an overly demanding standard in criticizing SAP for failing to specifically identify individuals as *trial* witnesses") (emphasis in original).

Here, many key third parties are within the subpoena power of NDCA but not of this District. The named inventors of the asserted patents and the prosecuting patent attorney—non-parties—are in NDCA, outside the subpoena power of this Court. The location of the inventors is crucial in this case: they possess critical information including whether they concealed the alleged inventions from their California employers to avoid assigning them away at the time of the invention, as well as whether they made false or misleading statements to the Patent Office in doing so and failing to disclose Cisco and Intel prior art. *See, e.g., Jawbone Innovations, LLC v. Amazon.com, Inc. et al.,* 3:22CV06727 Dkt. 60, ¶ 1 (E.D. Tex. November 1, 2022) (granting a motion to transfer to NDCA when relevant information for Amazon's inequitable conduct defense was in NDCA).

Additionally, witnesses knowledgeable about key prior art (who work for Google, Cisco, Intel, and Arista) are all located in NDCA. Exhibits 4-14; *In re Juniper*, 14 F.4th 1313, 1319 (Fed. Cir. 2021) (requiring a district court to consider prior-art witnesses in the transfer analysis). These

individuals—who are not within the subpoena power of this Court—are uniquely knowledgeable about the systems and technology that predate the Accused Products. ASL has no reason to believe that any of these third-party witnesses (who are not affiliated with any party to this case) would appear voluntarily to testify absent compulsory process. *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *3 (Fed. Cir. Oct. 13, 2021) (non-party witnesses may be presumed unwilling when no indication to the contrary).

What's more, third parties identified by Edge as having relevant information are also within the NDCA's subpoena power. Initial Disclosures; Exhibit 2; Exhibit 3; Exhibit 17, Big Data Federation LinkedIn profile. To be sure, Edge also identifies two individuals that it claims have relevant knowledge in Texas: two individuals associated with the University of Texas at Dallas that Edge identifies as "Investigators … knowledgeable regarding [Edge's] sponsored research, design, development, evaluation, and/or technology commercialization related to the Asserted Patents." Initial Disclosures; Exhibit 5; Exhibit 7. But it is hard to understand what unique information these individuals will testify to at trial, given that (1) Edge only acquired the asserted patents in April 2023, Exhibit 16, Asserted Patent Assignment, and (2) Edge does not allege (or show on its website) that it has *any* commercial products, Compl. ¶¶ 1–25. In any event, if they are affiliated with Edge, the UT Dallas individuals are more likely to be willing witnesses.

Because far more witnesses are located within NDCA, this factor heavily favors transfer. *Netflix*, 2022 WL 167470, at *4 (finding this factor "tilt[s] strongly toward transfer because Netflix identified far more third-party witnesses in the [transferee] forum").

### c.    NDCA Is More Convenient For Willing Witnesses

"[T]he relative convenience for and cost of attendance of witnesses between the two forums is 'probably the single most important factor in transfer analysis.'" *Juniper Networks*, 14 F.4th at 1318 (quoting *Genentech*, 566 F.3d at 1343); *In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir.

11

2020). "When the distance between an existing venue . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317; *TikTok*, 85 F.4th at 361. "[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) (per curiam).

Nothing suggests that absent compulsory process, any of the relevant third-party witnesses would testify at trial in this District. And even if they would, it would be far more convenient for them to do so in NDCA. That includes the AWS employees responsible for EKS and ECS who are principally in Seattle, Washington or in NDCA.[3] Several ASL employees responsible for developing the primary internal ASL tools that use EKS or ECS are similarly located on the West Coast closer to NDCA, and none reside in EDTX where ASL does not even maintain corporate offices. For such employees, travel to NDCA will be significantly more convenient. Seattle and the Bay Area, for example, are connected by many direct 2-hour nonstop flights. By contrast, there are no direct flights from San Francisco, San Jose, or Seattle to Marshall, Texas. Witnesses would need to fly roughly 4 hours to Dallas and then embark on a 170-mile drive from Dallas-Fort Worth Airport to Marshall. Exhibit 18. Travel to and from NDCA is far more convenient and less costly—particularly for the many witnesses who are at home in that District.

The same is true for Edge's identified witnesses. Edge's Initial Disclosures only identify its CEO as a relevant employee witness. However, Mr. Kim apparently lives in South Korea. A direct flight to San Francisco is more convenient to Mr. Kim than a longer flight to Dallas, followed

---

[3] No AWS personnel with knowledge of the development, operation, maintenance, and improvement of the Accused Products reside or work in the Eastern District of Texas. Bala Decl. ¶¶ 4, 7. Rather, they principally reside and work on the West Coast.

by a 170-mile drive.  Indeed, this District, the Fifth Circuit, and the Federal Circuit all agree that travel from South Korea to California is more convenient than from South Korea to Texas.  *See, e.g.*, *Mullen Indus. LLC v. Samsung Elecs. Co.,* 2:24-cv-00049-JRG, 2025 BL 98900 (E.D. Tex. Mar. 25, 2025) (citing *Samsung*, 2023 WL 8642711, at *2; *TikTok*, 85 F.4th at 361).  Finally, even assuming that Edge's witnesses from the University of Texas at Dallas were willing witnesses who would testify at trial, the potential lower cost of attendance for two witnesses would not outweigh the greater cost incurred by the much larger number of willing witnesses located outside this District.

    d. <u>No Practical Problems Would Arise by Litigating This Case In NDCA.</u>

   This factor is neutral because keeping this case in EDTX does not advance judicial economy.  *See Mullen Indus.* 24-cv-49, Dkt. 90, (E.D. Tex. Mar. 25, 2025) at 9 (finding this factor neutral in the transfer analysis where the case was in its early stages).  The asserted patents have not previously been litigated here and this case is in its early stages, and Edge only just served its infringement contentions for the four patents it recently added.

    **3.** **The Public Interest Favors Transfer.**

    a. <u>NDCA Has A Strong Local Interest In This Case.</u>

   At its core, this case has nothing to do with this District and much to do with NDCA.  The asserted patents were allegedly invented in California by two individuals who continue to reside in California.  Major, and potentially dispositive, issues in this case include whether these inventors assigned the technology to their California employers and whether they failed to disclose California companies' prior art to the Patent Office.  The Accused Products were developed by individuals who are in California and Washington.  NDCA, as discussed above and below, is therefore the district which has the greatest local interest in this case.  EDTX, on the other hand,

has no corresponding interest in resolving this dispute. The only connection between this case and EDTX is Edge's tactical choice to file here.

As noted above, while Edge tries to bolster its ties to this District by claiming to have an office in Plano, Texas, that is merely a WeWork shared office location. Exhibit 1. Edge has not disclosed *any* employees with relevant knowledge located in EDTX, highlighting that it is not a genuine place of plaintiff's business that might offer a meaningful connection with this district. Initial Disclosures; s*ee, e.g.*, *RFCyber Corp. v. Costco Wholesale Corp.*, 24-cv-00546 Dkt. 1, ¶ 1 (E.D. Tex. July 18, 2024) ("RFCyber is a Texas corporation with a place of business at 7700 Windrose Avenue, Suite G300, Plano, Texas 75024.").

While ASL operates Fulfillment Centers in EDTX (as in many districts across the country), this general and unrelated operational presence does not tip the balance. *Juniper Networks*, 14 F.4th at 1320 ("general presence in the Western District of Texas is not enough"). The ASL employees at these Fulfillment Centers have nothing to do with the Accused Products, nor are any ASL employees who develop internal applications using the Accused Products located in EDTX at these warehouses or fulfillment centers. This factor favors transfer.

### b. The Remaining Public Factors Are Neutral.

The remaining public factors include court congestion, familiarity with the governing law and the avoidance of unnecessary problems with conflict of laws. *Volkswagen I*, 371 F.3d at 203. As to court congestion, courts should assign no weight against transfer if "the plaintiff 'is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution.'" *Mullen Indus.* 24-cv-49, Dkt. 90, (E.D. Tex. Mar. 25, 2025) at 8 (quoting *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023)). That is the case here. And both EDTX and NDCA are familiar with patent law, and

present no concerns regarding conflict of laws.  So these factors are neutral.  *Smart Mobile Techs.*, 2023 WL 5540152 at *9.

## V.    CONCLUSION

Balancing all of the § 1404 factors, NDCA is clearly a more suitable forum than EDTX. The Court should transfer the case to NDCA.

███████████████████████

Dated: May 20, 2025

Respectfully submitted,

*/s/ Shaun W. Hassett with permission from*
*S. Giri Pathmanaban*
Michael E. Jones
SBN: 10929400
Shaun W. Hassett
SBN: 24074372
POTTER MINTON, PC
102 N. College, Suite 900
Tyler, TX 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846
Email: mikejones@potterminton.com
shaunhassett@potterminton.com

S. Giri Pathmanaban
SBN: 24074865
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Rd, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4140
Facsimile: (650) 815-4199
Email: gpathmanaban@cgsh.com

Clement Naples
E.D. Tex. Bar No. NY4217717
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2516
Facsimile: (212) 225-3999
Email: cnaples@cgsh.com

*Attorneys for Defendant Amazon.com Services LLC*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on May 20, 2025.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on May 20, 2025.

*/s/ Shaun W. Hassett*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Shaun W. Hassett*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), the undersigned certifies that S. Giri Pathmanaban, counsel for Defendants, met and conferred with Joseph Mercadante, counsel for Plaintiff, on the 19th day of May, 2025.  Plaintiff's counsel stated that Plaintiff is opposed to the relief Defendant requests herein, leaving an open issue for the court to resolve.

*/s/ Shaun W. Hassett*
Shaun W. Hassett

*/s/ S. Giri Pathmanaban*
S. Giri Pathmanaban

17