**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| EDGE NETWORKING SYSTEMS LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. 2:24-CV-00887-JRG-RSP |
| AMAZON.COM SERVICES LLC, | § | |
| *Defendant*. | § | |
| | § | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Amazon.com Services LLC's Motion for Summary Judgment. **Dkt. No. 83**. The motion is fully briefed. *See* Dkt. Nos. 95, 99, 105. The Court allowed supplemental briefing, *see* Dkt. Nos. 161, 183, and held an evidentiary hearing on July 21, 2026. Amazon seeks summary judgment that Plaintiff Edge Networking Systems LLC lacks ownership of the Asserted Patents (due to employment agreements) and thus lacks standing to assert them against Amazon. For the reasons set forth below, the Court finds that Edge owns the Asserted Patents, has standing, and that the Motion should be denied.

## I. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine dispute of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material

facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact." *Celotex*, 477 U.S. at 323.

The plaintiff bears the burden on standing by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 (1992); *United States v. Pierce*, 959 F.2d 1297, 1303 (5th Cir. 1992). To show standing, "the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit." *Abraxis Bioscience, Inc. v. Navina LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (quoting *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003)) (other citations omitted). "[I]f the original plaintiff lacked Article III standing initially . . . the jurisdictional defect cannot be cured after inception of the lawsuit." *Id.* (quoting *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005)).

"Although state law governs the interpretation of contracts generally . . . the question of whether a patent assignment clause creates an automatic assignment or merely an obligation to assign is intimately bound up in the question of standing in patent cases" and is "accordingly it is treated as a matter of federal law." *Abraxis*, 625 F.3d at 1364 (quoting *DDB Techs., L.L.C. v. MLB Adv. Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008)); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000); *cf. Intell. Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1320–21 (Fed. Cir. 2017) (applying California state law to a contract dispute about whether an assignment included a then-pending application).

## II. DISCUSSION

Amazon challenges Edge's standing on the grounds that Edge does not own the patents it asserts, as they are owned by third parties Cisco and Intel. It is undisputed that Cisco employed

Dr. Pouya Taaghol, and Intel employed Mr. Vivek Ramanna, at the time of their conception or reduction to practice of U.S. Patent No. 9,843,624 (the "'624 Patent").[1] The first issue presented by Amazon's challenge is whether the employment agreements between the inventors and these third parties automatically assigned rights to the invention claimed in the '624 Patent (and thereby the follow-on inventions claimed in the Asserted Patents) to these third parties.

It is undisputed that the Intel-Ramanna Agreement exists. Edge disputes that the Cisco-Taaghol Agreement exists, because no signed copy was produced. Amazon argues that the agreement is self-executing, so no signature is required. Amazon also argues that Dr. Taaghol could not have been paid without signing such an agreement. These arguments are unpersuasive. The line preceding the signature, stating that "This Agreement shall be effective as of the earlier of the date of signature below or the first day of my employment with Company," does not nullify the need for a signature; plainly, it merely back-dates. Additionally, given Mr. Bryan Sinclair's testimony that no signed Cisco-Taaghol Agreement could be located, the Court finds it likely that Cisco's no-pay-until-signing policy is not always followed. However, Dr. Taaghol's admission that he was "absolutely" "still subject to Cisco's terms of employment including the invention agreement," persuades the Court the evidence shows that the Cisco-Taaghol Agreement was signed and in force.

Next, it is undisputed that both agreements are governed by California law. California Labor Code Section 2870 reads as follows:

> (a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment,

[1] Dr. Taaghol alone filed the provisional application that led to the '624 Patent. Mr. Ramanna and Dr. Taaghol filed the non-provisional jointly, however, in June of 2014, while Mr. Ramanna was employed at Intel and Dr. Taaghol was employed at Cisco. All patents asserted in this case claim priority to the '624 Patent, including U.S. Patent Nos. 11,695,823, 10,893,095, 10,686,871, 12,126,673, 12,113,850, 12,113,851, and 12,126,674 (the "Asserted Patents").

supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2) Result from any work performed by the employee for the employer.

The first question for the Court is whether the subject matter of the Asserted Patents is related to Cisco and Intel's businesses.[2]

The Court finds that the "related to" inquiry is satisfied. The crux of Dr. Ricardo Valerdi's expert testimony on behalf of Edge is that the Asserted Patents operate on higher layers of the Open System Interconnection ("OSI") stack (including on Layer 7) than Intel and Cisco's products, and are focused on container orchestration, which Intel and Cisco do not address. A former Cisco engineer, Mr. John McDowall, however, testified that while he was working on software-defined networking ("SDN") at Cisco, he helped develop One Programming Kit ("onePK"). It became public in 2012 and provided tooling for Layer 7 application programing interfaces ("APIs") so that developers could write code creating applications to orchestrate containers across layers to optimize for enterprise needs. Cisco's onePK product allowed applications to run across a distributed network system. Amazon also proffered testimony through its expert, Dr. Robert Akl, directly connecting Figure 10 of the '871 Patent to the block diagram in Ms. Rose Schooler's Intel keynote address in April 2013 concerning Intel's data plane

---

[2] Although the parties disagree as to the level of abstraction through which the subject matter of the Asserted Patents is construed, and thereby how broadly to read the term "relate[d]," this dispute is immaterial because the Court finds the technology that is the subject of the Asserted Patents is related to Cisco and Intel's businesses, even under Edge's narrow definition of that technology, as explained *infra*.

However, the Court does find that the "related to" term must be read broadly as a matter of law in view of the competing interests that Section 2870 protects. Section 2870(a) is "understood to be addressing only an employer's default right to insist on assignments . . . and then narrowing that right so as to benefit employees." *Whitewater W. Indus., Ltd. v. Alleshouse*, 981 F.3d 1045, 1058 (Fed. Cir. 2020). However, Section 2870(a)(1), with its explicit carve-out, protects the rights of the employer by "defin[ing] which among such own-time/own-resource inventions of an employee the employer can still claim through mandated assignment." *Id.* at 1059. Consequently, "Courts interpreting employee assignment agreements in the context of Section 2870 have construed the 'related to' phrase broadly." *Cadence Design Sys., Inc. v. Bhandari*, No. C 7-823, 2007 WL 3343085, at *5 (N.D. Cal. Nov. 8, 2007) (citations omitted).

development kit ("DPDK") product. So, even under Edge's narrow definition that the subject matter of the Asserted Patents is container orchestration at higher OSI Layers, Cisco and Intel both had product offerings in that same domain, which is sufficient to satisfy the "related to" inquiry under Section 2870(a)(1).

Because the Asserted Patents are related to Intel and Cisco's business under Section 2870(a)(1), they may be subject to mandated assignment through the Cisco-Taaghol and Intel-Ramanna employment agreements. *Whitewater*, 981 F.3d at 1059. The next question is whether the agreements effected that assignment. Whether assignment is automatic (and requires no future act) depends on whether the clause presently assigns all future inventions to the employer or merely agrees to do so in the future. *Omni Medsci, Inc. v. Apple Inc.*, 7 F.4th 1148, 1152 (Fed. Cir. 2021).

A statement "that the inventor 'agrees to grant and does hereby grant' title to the patent . . . constitute[s] a present automatic assignment of a future interest." *Id.* (quoting *FilmTec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1574 (Fed. Cir. 1991) (looking to other language to confirm this intent)); *see also id.* at 1153 ("Each case in which this court found a present automatic assignment examined contractual language with a present tense executing verb." (first citing *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1326 (Fed. Cir. 2010); then citing *DDB Techs.*, 517 F.3d at 1290; then citing *Speedplay*, 211 F.3d at 1253; and then citing *FilmTec*, 939 F.2d at 1570); *Preston v. Marathon Oil Co.*, 684 F.3d 1276 (Fed. Cir. 2012) ("[D]oes 'hereby assign[.]'"). A statement that "the inventor 'will assign'" constitutes an agreement to assign in the future. *Omni*, 7 F.4th at 1152 (quoting *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580 (Fed. Cir. 1991)). Finally, a statement that merely "stipulates the conditions governing the assignment of property rights" constitutes neither present nor future assignment. *Id.*

Both the agreements here have present automatic assignment language. The Intel-Ramanna Agreement states that Mr. Ramanna does "hereby assign to Employer . . . all rights in the Intel Proprietary Development," which includes "all patents" which he "invent[s]" "that relate at the time of conception or reduction to practice . . . to the Employer's . . . business." The Cisco-Taaghol Agreement states in relevant part that Dr. Taaghol does "hereby assign to Assignee Entity all my right, title, and interest in and to each Company Invention," which includes "all Inventions made, created, conceived, developed, reduced to practice, or learned by [him] either alone or with others, during the period of [his] employment by Company." While Edge points to the statement in the Intel-Ramanna Agreement that states that Ramanna "agrees to execute any and all documents (including assignment agreements) reasonably requested by Employer or its designee," as evidence that future assignment is necessary, such language is plainly meant, as the agreement specifies, to "memorialize the ownership" as set forth earlier. Also, the fact that the Cisco-Taaghol Agreement indisputably accomplishes present automatic assignment of future patents to Cisco is still sufficient to deprive Edge of standing.

That is, unless Edge qualifies as a *bona fide* purchaser ("BFP") under the Patent Act. *See* 35 US.C. § 261; *Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 384 F.3d 1323, 1328–29 (Fed. Cir. 2002) (holding that the bona fide purchaser doctrine for patents "is a matter of federal law" governed by Section 261).

Amazon raises a legal dispute that must be considered first. In *FilmTec*, the Federal Circuit stated that "In this case, if Cadotte granted MRI rights in inventions made during his employ, and if the subject matter of the '344 patent was invented by Cadotte during his employ with MRI, then Cadotte had nothing to give FilmTec and his purported assignment to FilmTec is a nullity. Thus, FilmTec would lack both title to the '344 patent and standing to bring the present action." 939 F.2d

at 1572. Amazon's theory, based on this reasoning, is that under the assignment set forth in the employment agreements, "the inventors never had title in the first place" that they could convey and Edge could use to claim the benefit of Section 261. Pretrial Conf. Tr., Dkt. No. 243 at 59:4–5.

Amazon's theory is inconsistent with the remainder of *FilmTec*, however, and the law more generally. As the Federal Circuit explained in *FilmTec*, an "assignment of rights in an invention . . . made prior to the existence of the invention" is "an expectant interest," which conveys "at most an equitable title." 939 F.2d at 1572 (citation omitted). "Once the invention is made and an application for a patent is filed, however, legal title to the rights accruing thereunder would be in the assignee (subject to the rights of a subsequent purchaser under § 261), and the assignor-inventor would have nothing remaining to assign."[3] *Id.* It follows, then, that Section 261 still applies, because it statutorily "cut[s] off prior legal interests, which the common law rule did not," in addition to "any prior equitable encumbrance," whether title transferred automatically from the inventor to his employer. *See id.* at 1573–74.

Continued consideration of BFP even in the context of prior automatic assignment comports with the law. Similar facts were presented in *Board of Trustees of Leland Stanford Junior University v. Roche Molecular Systems, Inc.*, 583 F.3d 832 (Fed. Cir. 2009): the inventor had assigned his rights in an agreement to a third party prior to an assignment to the plaintiff, which "negated his subsequent assignment," and left plaintiff "with defective title." *Id.* at 842. This fact did not prevent the Federal Circuit from considering whether the plaintiff was a BFP there, as Amazon suggests it should here. Additionally, the Federal Circuit recognized that Section 261

[3] Amazon's counsel argued that BFP would apply in a materially equivalent hypothetical: "Someone who had legal title granted in the first place an assignment . . . to a first purchaser and then granted . . . to someone else, and the first purchaser did not record title within the three-month time frame and the second purchaser took without notice and for value . . . ." Pretrial Conf. Tr., Dkt. No. 243 at 58:23–59:4. In Amazon's hypothetical, the legal title was assigned to the first purchaser, so the assignor no longer had title when he assigned to the second purchaser; and yet, the second purchaser was protected, Amazon agreed, by the BFP doctrine.

protects a BFP even "against the real owner who had lost title to the property, for example, by fraud." *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1329 (Fed. Cir. 2002) (holding that the BFP "rule is not available to a mere licensee, it is only available to a purchaser who acquires title"). Thus, the Court finds that, if the elements are met, the BFP doctrine applies to cut off Cisco's and Intel's equitable and legal interests in the Asserted Patents as against Edge.

Section 261, Paragraph 4, provides that "An interest that constitutes an assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office [("PTO")] within three months from its date or prior to the date of such subsequent purchase or mortgage." *Id.* It is undisputed that Edge purchased the Asserted Patents for valuable consideration, and that Intel and Cisco did not record any alleged interest they may have with the PTO. The only remaining dispute with respect to Edge's BFP argument is whether Edge had notice.

"'Notice' under § 261 can include constructive or inquiry notice, in addition to actual notice." *Stanford*, 583 F.3d at 843 (Fed. Cir. 2009); *see also FilmTec*, 939 F.2d at 1574 ("Given the key roles that Cadotte . . . played at both MRI and later at FilmTec, at a minimum FilmTec might be said to be on inquiry notice of any possible rights in MRI . . . as a result of Cadotte's work at MRI."); *Katz v. Lear Siegler, Inc.*, 5 F.3d 1502, 1993 WL 262564, at *4 (Fed. Cir. 1993) (unpublished table decision).

Actual notice is not shown, but Amazon contends Edge had inquiry notice. Relying on *Grail Semiconductor v. Renesas Electronics America Inc.*, 2012 WL 12920690 (N.D. Cal. Sept. 18, 2012), Amazon argues that the type of inquiry notice contemplated by Section 261 is satisfied by a mere "aware[ness] of at least the possibility of a claim." *Id.* at *12. At that point, Amazon argues, quoting *Katz*, 1193 WL 262564, that a purchaser "is chargeable with the knowledge which

*ordinary* diligence would have elicited" because "willful or careless blindness is not the sort of lack of notice that Section 261 contemplates." *Id.* at *4.

First, *Grail* clearly does not apply.[4] Second, while these statements of law from *Katz* are ostensibly correct, they are not complete. *Katz* applied a two-step framework for inquiry notice under Section 261. "[C]onstructive notice may be based on any fact within the knowledge, or means of knowledge, of the purchaser of the unrecorded assignment, and which fact should logically lead him, upon inquiry, to a knowledge of the existence and purport of that assignment itself." 1993 WL 262564, at *4 (citing A. Walker, *Walker on Patents* § 281 (4th ed. 1904)). "This includes the facts that the subsequent assignee knew at the time of purchase, yet did not inquire at all into . . . ." *Id.* (citing *CMS Indus., Inc., v. L.P.S. Int'l, Ltd.*, 643 F.2d 289, 294 (5th Cir. 1981)).

However, the inquiry notice duty to investigate may be discharged by reasonable diligence. *Id.* "A person must use ordinary thoughtfulness and make accessible inquiries. If he does not, and avoids the inquiry, he is chargeable with the knowledge which ordinary diligence would have elicited, and cannot be considered a" BFP. *Id.* (quoting *United States v. Orozco-Prada*, 636 F. Supp. 1537, 1543 (S.D.N.Y. 1986), *aff'd*, 847 F.2d 836 (2d Cir. 1988)). A purchaser has a duty to ask "minimal, obvious" questions concerning the patent.[5] *Id.* Furthermore, *Katz* is

---

[4] In *Grail*, Stern (the inventor) signed an agreement at the founding of Powergate (a third party), assigning his rights in the asserted patents to it; he later founded a second company, Grail (plaintiff), and purported to sell his rights to the asserted patents to Grail, as an officer there. 2012 WL 12920690, at *2–4, *6, *12. Relying on *FilmTec*, 939 F.2d at 1574, which dealt with largely analogous facts—Cadotte (inventor) was a founder of FilmTec (plaintiff) and was aware of his prior contractual assignment—the basis for the Court's decision was that Stern's knowledge as an employee-inventor at Powergrate could be imputed to Grail. 2012 WL 12920690, at *12 ("Under the circumstances . . . it is not credible that Grail (via Stern) had no notice . . . ."). These cases do not apply to the present facts where Dr. Taaghol's knowledge cannot be imputed to Edge.

[5] Some Courts have expanded the diligence required to discharge the inquiry notice duty. For example, in *SHO Products, LLC v. Puff Corp.*, No. 22-6709, 2023 WL 3549712, at *4 (C.D. Cal. Apr. 6, 2023), the court reasoned that "[t]hough Defendant asked the 'minimal, obvious' questions, Defendant did not explore, push back on, or attempt to corroborate any information Ms. Massaro provided during the negotiations even though she provided inconsistent responses," which that court found "plausibly supports an inference that Defendant did not sufficiently fulfil its inquiry duty." The Court need not address that expansion here, because it finds that Edge satisfied its inquiry notice duty even under this more stringent standard by conducting as thorough a due diligence as it reasonably could have given the circumstances, as explained *infra*.

nonprecedential, its facts were "extreme," and its holding was limited to "the undisputed facts of [that] case." *Id.*

While Edge disputes that it had inquiry notice of a competing ownership claim to the Asserted Patents, the Court cannot square that position with Mr. Grant Kim's testimony that Dr. Taaghol volunteered the fact that his work at Cisco did not relate to his patents, and the representation Dr. Taaghol provided in the Patent Purchase Agreement ("PPA").

However, the Court finds that Edge discharged its inquiry duty by exercising reasonable diligence. This finding is based largely on the Court's subsidiary finding crediting Mr. Kim's character as trustworthy and his testimony as credible and reasonable. Although the Letter of Intent ("LOI") had a thirty-day due diligence period, Mr. Kim testified that his investigation began before and continued after that period. He testified that purchasing the patents was a large undertaking for Edge, and he treated his investigation as his full-time job for months. He testified that his investigation included a detailed review of licenses, encumbrances, the status and title of the patents (including reviewing the assignment records), and several conversations with Dr. Taaghol, Mr. Eastone Bae of Intellectual Discovery (an investor who conducted his own investigation), Mr. Christopher Horgan (the prosecuting patent attorney), and Mr. Paul Greco of ICAP (a reputable third party intermediary patent broker, which conducted its own investigation). Mr. Kim also hired outside counsel to perform due diligence.

Amazon faults Mr. Kim for not speaking to the second inventor, Mr. Ramanna, and for not further investigating Intel's connection. The Court finds that this choice was reasonable considering testimony that Mr. Ramanna merely acted as an assistant to Dr. Taaghol, that Mr. Ramanna only helped conceive of some dependent claims, that Mr. Ramanna promptly assigned

his rights to Dr. Taaghol, and that Mr. Ramanna thereafter moved back to India, where he could not be reached.

Next, Amazon challenges Mr. Kim's failure to investigate public documents concerning Intel and Cisco's technologies to confirm that Dr. Taaghol's patents were not related. The inquiry duty, however, only requires ordinary diligence. Although no authority could be located on this point, the Court disagrees that a purchaser is charged with the technical knowledge of a POSITA and must evaluate with this knowledge whether the patents are related to the inventors' prior employers' businesses, under the circumstances of this case, to discharge its inquiry duty. Such an extraordinary duty would undermine the policy of Section 261, threaten the transferability of patents, and be inconsistent with *Katz*.

The purpose of Section 261 is to bolster trust in the patent system to encourage investment (by ensuring that good faith purchasers will be guaranteed clean title) and preserve transparency (by incentivizing monitoring of employees' patents and filing of assignments with the PTO). It would erode that purpose to require a potential purchaser to have the knowledge of a POSITA and perfect knowledge of two prior employers' businesses (from ten years prior, based on all public documents) such that they could evaluate the "related to" inquiry under California Labor Code Section 2870 in order to take clean title.

The plaintiff in *Katz* failed to ask the inventor "minimal, obvious questions" about his "contractual relationship with" a third party, despite having awareness of that relationship. 1993 WL 262564, at *4. The Federal Circuit implied that receiving a representation might be sufficient. *Id.* ("[N]or did . . . Theodore ma[ke] any representations to him . . . ."). Here, Mr. Kim testified to conversations he had with Dr. Taaghol concerning ownership of the Asserted Patents and received an explicit representation from Dr. Taaghol that his patents were unrelated to Intel and Cisco's

businesses in the PPA. The Court finds that Mr. Kim's reliance on Dr. Taaghol's high-ranking position as former CTO of both Intel and Cisco, in making this representation, was reasonable.

Amazon argues that Dr. Taaghol's testimony undermines the reasonableness of Edge's reliance. Dr. Taaghol testified that, although he was a CTO at Cisco, due to circumstances beyond his control, his work was limited and he did not know the extent of Cisco's business. However, Mr. Kim testified he was unaware of the extent of Dr. Taaghol's limited role at Cisco, which the Court finds is credible.

Finally, Amazon argues that it successfully subpoenaed information concerning Cisco and Intel's ownership interests and criticizes Edge's failure to do so. On this point, the Court credits the testimony of Messrs. Kim and Bae that, based on their experience in the patent transactions group at LG Electronics, that Amazon and Cisco would not have responded to Edge's inquiry as an unknown, third party, but would respond to Amazon's inquiry as a substantial institutional customer. Furthermore, a subpoena was not available to Edge prior to litigation.

Accordingly, Section 261 provides that any interests of Cisco and Intel in the Asserted Patents are "void as against" Edge. In other words, Edge has demonstrated by a preponderance of the evidence that it has an exclusionary right in the Asserted Patents and therefore has standing.

## III. CONCLUSION

For the reasons and to the extent provided above, the Court **RECOMMENDS** (1) an affirmative finding that Edge has standing to assert the Asserted Patents in this lawsuit and (2) that Amazon's Motion (Dkt. No. 83) be **DENIED**.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report within fourteen (14) days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal

conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 26th day of July, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE